## Staunton.

### DAVIS v. COMMONWEALTH.

#### SEPTEMBER 12, 1901.

1. CRIMINAL LAW—*Presumption of Innocence—Evidence to Overcome.*—
In a criminal prosecution it is incumbent on the Commonwealth to
prove the *corpus delicti,* and the commission of the offence by the
accused. The accused is presumed to be innocent until his guilt is
proved beyond a reasonable doubt, and, whether the evidence be
direct or circumstantial, he is not to be prejudiced by the inability
of the Commonwealth to point out any other criminal agent. The
evidence must be not only consistent with his guilt, but inconsistent
with his innocence.

Error to a judgment of the Circuit Court of Fauquier county,
rendered December 18, 1900, affirming a judgment of the
County Court of said county, whereby the plaintiff in error was
sentenced to the penitentiary for four years for an attempt to
poison.

*Reversed.*

The opinion states the case.

*Moore & Keith,* for the plaintiff in error.

*Attorney-General A. J. Montague,* for the Commonwealth.

CARDWELL, J., delivered the opinion of the court.

H. A. Davis was indicted in the County Court of Fauquier
county for poisoning a well, and was convicted and sentenced to
four years imprisonment in the penitentiary. The Judge of the
Circuit Court awarded him a new trial, and at that trial he was

again convicted and sentenced to a like imprisonment. This court, at its March term, 1901, set aside that judgment and verdict, and awarded him a new trial. A third trial has been had, and the same verdict and judgment have been rendered against the prisoner, and this court has awarded him a writ of error, the writ having been denied by the Judge of the Circuit Court.

The facts spread upon the record are practically the same as those which appeared in the former record in this court, and they are fully stated in the opinion of the court, *supra*.

The testimony relied on by the Commonwealth, at the last trial, differs from that at the preceding trial, only in the following particulars: Mrs. Davis, the wife of the prisoner, while testifying for the Commonwealth, produced a letter written to her by the prisoner, and dated October 8, 1900. In this letter he says: "I know you do not think I ever tried to poison you, and you are certainly wrong about hearing me come to Stewart's pump on the night of December 10th. If you heard anybody leave the store, it was (Baker) a colored man who I was playing cards with that night. I never thought you could have heard him when he left, though he wore large, heavy boots, and usually slams the door when he goes out."

The letter having been admitted in evidence, the Commonwealth introduced, over the objection of the prisoner, Nelson and Henry Baker to prove that only three colored men by the name of Baker were living at Meetze station, the locality of the prisoner's store, and that neither of the witnesses were playing cards with him on the night in question. Nelson Baker says that he did not remember playing cards with the accused Sunday or Monday night for over three years; that he and his two brothers, Henry and James, were the only colored men by the name of Baker he knew of living in the vicinity of Meetze, but there might be others. Henry Baker says that he was not at Meetze station on the night of December 10th; was in Washington, or Maryland, and didn't get home until the 22d; and it was

agreed by counsel that if James Baker had been present at the trial he, too, would have stated that he was not playing cards with the prisoner on the night of the 10th of December, nor was he there.

Conceding that the Commonwealth had the right to introduce Nelson, Henry and James Baker to contradict the statement made by the prisoner in the letter of October 8, 1900, it had itself introduced in evidence, as to which, in the view that we take of this case, it is unnecessary for us to express an opinion, the conflict between the statement of the Bakers and that made by the prisoner in the letter was but a circumstance to be considered by the jury, and supplied no fact needed to connect the prisoner with the offence of which he was charged, and added nothing to the incriminating force of the evidence which we have already said was wholly insufficient to warrant his conviction.

It was for the Commonwealth to prove, first, the *corpus delicti;* second, that the *accused* committed the offence, and to warrant a conviction the evidence should be such as, if true, would exclude all rational doubt of the guilt of the accused. He is presumed to be innocent until his guilt is established, and he is not to be prejudiced by the inability of the Commonwealth to point out any other criminal agent, nor is he called upon to vindicate his own innocence by naming the guilty man.  He rests secure in that presumption of innocence until the proof is adduced which establishes his guilt beyond a reasonable doubt, and whether the proof be direct or circumstantial, it must be such as excludes any rational hypothesis of the innocence of the accused.   The guilt of a party is not to be inferred because the facts proved are consistent with his guilt, but they must be inconsistent with his innocence.  *Johnson's Case*, 29 Gratt. 796; *McBride's Case*, 95 Va. 826; *Brown's Case*, 97 Va. 791, and authorities cited.

We are aware of the weight which ought to be given to three

concurring verdicts approved by the learned judge who presided at the trial, but, in the light of the well recognized principles stated above, we can reach no other conclusion than that the evidence does no more than create a suspicion of the prisoner's guilt.   It may be said that the facts shown are consistent with his guilt, but they are also consistent with his innocence, and therefore do not amount to that degree of proof which connects him with the offence and warrants his conviction.

The judgment must be reversed, the verdict set aside, and the cause remanded to the County Court of Fauquier county for a new trial, if the court and prosecuting attorney consider that a better case against the prisoner can be made out.

*Reversed.*